# Ex Parte JUNG SHING.*

### (145 Pac. 637.)

**Indictment and Information—Successive Indictments.**

1. Where relator was indicted for murder in the first degree, and later the Constitution of the state was so amended as to abolish the death penalty, conceding that thereby murder in the first degree was left no crime for lack of punishment, the court properly resubmitted the indictment to the grand jury, which returned another indictment for murder in the second degree, so that the petitioner be held on bench warrant thereunder; since murder in the second degree, being a distinct and separate crime, is unaffected by such constitutional amendment, and since the court, under Sections 1704–1706, L. O. L., is given the requisite authority as to the dismissal of charges.

**Indictment and Information—Degrees of Murder.**

2. An indictment charging murder in the first degree includes the crimes of murder in the second degree and manslaughter, and a conviction of any one of the three may be had thereunder.

[As to form and sufficiency of indictment for murder, see note in 3 Am. St. Rep. 279.]

**Indictment and Information—Degrees of Murder.**

3. Trial on an indictment charging murder in the second degree cannot result in conviction of murder in the first degree, since it does not include all the necessary elements of murder in the first degree.

[As to statutory degrees of homicide, see note in 18 Am. Dec. 774.]

**Habeas Corpus—Grounds for Relief—Irregularities—Defects in Indictment.**

4. *Habeas corpus* will not afford relief, unless the process under which petitioner is held is not merely irregular, but void.

Original proceeding in Supreme Court.

Department 2. Statement by Mr. Justice Harris.

This is an original proceeding to test the right of the sheriff of Multnomah County to restrain the petitioner of his liberty. A petition for writ of *habeas*

---

*Upon the necessity that indictment for homicide cover lower or different degrees found by jury, see notes in 21 L. R. A. (N. S.) 16, and 43 L. R. A. (N. S.) 813.

As to the sufficiency of indictment for murder, see note in 39 L. Ed. (U. S.) 845.                    Reporter.

*corpus* was filed in this court by Jung Shing on December 5, 1914, and on the same day an order of allowance was made, whereupon the clerk issued the writ which commanded the sheriff of Multnomah County to certify and return the time and cause of imprisonment' or restraint on January 15, 1915. The sheriff filed his return on the day specified in the writ.

There is no controversy about the facts. An indictment was returned by the grand jury of Multnomah County on March 22, 1913, alleging the killing of one Lum Fong, and charging the petitioner who was accused under the name of ''Louie Hing,'' with the crime of murder in the first degree. A bench warrant was issued for the arrest of petitioner, who was, on November 21, 1914, apprehended and taken into the custody of the sheriff. The arraignment occurred December 4, 1914, and a plea of not guilty was entered December 8, 1914. On motion of the district attorney, an order was made December 21, 1914, by the Circuit Court resubmitting the indictment to the grand jury, and on the following day an indictment was returned into court charging the petitioner, under the name of ''Louie Hing,'' with the crime of murder in the second degree for the alleged killing of Lum Fong. After arraignment, time to plead was waived, and on December 24, 1914, the petitioner entered a plea of not guilty to the second indictment. Pursuant to an order of the court made January 13, 1915, by reason of the second indictment, a bench warrant for the arrest of petitioner was issued on the same day and immediately served. The Circuit Court fixed January 18, 1915, as the time for the trial of petitioner on the last indictment. The district attorney proposes to proceed on the second indictment only. The petitioner has been in the custody of the sheriff continuously

since November 21, 1914, the date when the first bench warrant was served.          Writ Dismissed.

For petitioner there was a brief with oral arguments by *Mr. William P. Lord* and *Mr. Daniel E. Powers*.

For the State there was a brief and an oral argument by *Mr. Arthur A. Murphy*, Deputy District Attorney.

Mr. Justice Harris delivered the opinion of the court.

The questions presented involve a consideration of the constitutional amendment abolishing the death penalty, and the effect, if any, had by that amendment upon the proceeding already narrated. The phase of the case most discussed, however, is whether the order resubmitting the first indictment and all subsequent proceedings were void.

1. In the petition for the writ it is asserted that the imprisonment of petitioner violates Article I, Section 10, and infringes upon Section I of the Fourteenth Amendment, of the Constitution of the United States. At the argument counsel did not insist upon the contention made in the petition, but it was urged that the Circuit Court did not have authority to make the order resubmitting the first indictment, and that, as a consequence, all subsequent proceedings were of no effect; that, since the second indictment is void, only the first indictment can be said to exist in legal contemplation; that, if a trial is had on the first indictment, the petitioner could only be tried for murder in the first degree, the crime specifically charged; but that the accused cannot be tried for that offense, because the

constitutional amendment abolishing the death penalty leaves the crime without a penalty, and that therefore the petitioner is entitled to be discharged, since he is restrained for an act that is not punishable.

At the general election held November 3, 1914, there was submitted to the electorate a proposed constitutional amendment which reads as follows:

"Article I of the Constitution of the State of Oregon shall be, and hereby is, amended by the addition of a section to said Article I, and it shall be designated as Section 36 of Article I.

"Article I.

"Section 36. The death penalty shall not be inflicted upon any person under the laws of Oregon. The maximum punishment which may be inflicted shall be life imprisonment.

"All provisions of the Constitution and laws of Oregon in conflict with this section are hereby abrogated and repealed in so far as they conflict herewith, and this section is self-executing."

Having received the required number of votes, and the result of the election having been proclaimed by the Governor, the amendment is now a part of the organic law of the state.

2, 3. Murder in the first degree is defined by Section 1893, L. O. L. Murder in the second degree is defined by other sections of the code, and so, too, is manslaughter defined by different sections. "Every person convicted of murder in the first degree shall be punished with death": Section 1903, L. O. L. Every person convicted of murder in the second degree shall be punished by imprisonment for life: Section 1904, L. O. L. A separate section of the code prescribes the penalty for manslaughter. While culpable homicide may present itself in any one of the three forms, and although the three offenses mentioned are separately

defined by different and distinct sections of the code, nevertheless an indictment charging murder in the first degree also includes the crimes of murder in the second degree and manslaughter, and a conviction of any one of the three may be had on such indictment. Neither the charge of murder in the second degree nor the offense of manslaughter includes the requisite elements of murder in the first degree. If tried on the second indictment, the petitioner could not be convicted of murder in the first degree.

It is not necessary at this time to decide whether the constitutional amendment referred to *ex proprio vigore* substitutes life imprisonment for the death penalty where the latter was the punishment heretofore prescribed; nor is it essential to the conclusion by us reached to determine whether the state could proceed upon the first indictment and place the petitioner on trial for the distinct crime of murder in the second degree. Assuming, however, for the purpose of argument only, that the constitutional amendment had the effect of stripping what was the crime of murder in the first degree of any enforceable penalty, and leaving it a mere nude definition, without vigor, because devoid of a penalty, and therefore not a crime (*State* v. *Stephanus,* 53 Or. 135 (99 Pac. 428, 17 Ann. Cas. 1146); *State* v. *Smith,* 56 Or. 21 (107 Pac. 980), even then on that assumption there is no ground for the contention that the crime of murder in the second degree is in any way affected. Murder in the second degree is a distinct crime, defined by the code the same now as before the amendment, and it is punishable the same now as before. The mere fact that the code permits a conviction of murder in the second degree on an indictment charging murder in the first degree affords no room for the claim that the constitutional

amendment in any way affects the definition of the crime of murder in the second degree or changes the prescribed punishment.

4. Did the Circuit Court have the authority to resubmit the first indictment? And, if such power did not exist, then were the subsequent proceedings void? While considering these questions, it must be borne in mind that mere irregularities cannot be inquired into, and the writ of *habeas corpus* will not afford relief unless the process upon which the petitioner is being held is void: *Ex parte Tice,* 32 Or. 179 (49 Pac. 1038); *Ex parte Foster,* 69 Or. 319 (138 Pac. 849). Throughout the inquiry we are also governed by the rule that the object of this proceeding is to ascertain whether the petitioner was legally restrained of his liberty at the time the sheriff made his return: *Iasigi* v. *Van De Carr,* 166 U. S. 391 (41 L. Ed. 1045, 17 Sup. Ct. Rep. 595); *Ex parte Dye,* 32 Mont. 132 (79 Pac. 689).

The order complained of was made by the Circuit Court December 21, 1914, and, after giving the title of the cause, reads as follows:

"Comes now Thomas G. Ryan, deputy district attorney, and moves this honorable court for an order resubmitting this cause to the grand jury of Multnomah County, Oregon, on the ground and for the reason that the indictment herein, No. C–3143, was restrained by the grand jury of Multnomah County, Oregon, on the 22d day of March, 1913, charging the above-named defendant and others with the commission of the crime of murder in the first degree; that since that time the penalty for said crime has been abolished by the people of the State of Oregon by initiative measures, and therefore, in order to avoid any possibility or probability of error which might result in defeating the ends of justice, this motion is made, and the court, being fully advised in the premises, and being of the opinion that said motion should be granted:

"It is therefore ordered that this indictment No. C–3143 be, and the same is hereby, resubmitted to the grand jury of Multnomah County, Oregon, for such consideration as they may deem fit and proper in the premises."

The petitioner plants himself on the ground that the statute does not furnish any authority for the action taken by the court; that the order was void with the result that the second indictment and bench warrant issued thereon are likewise of no effect.

The code provides when an indictment must be set aside on the motion of a defendant (Section 1483, L. O. L.); and, if set aside on such motion, the case may be resubmitted to the grand jury (Section 1485), in which event the accused must remain in custody, unless admitted to bail (Section 1486, L. O. L.). If a demurrer is interposed by a defendant, and if it is sustained, the court is empowered to direct that the case be resubmitted: Section 1495, L. O. L. The four sections of the code referred to are all included in Chapter 8. Section 1488 of that chapter provides that:

"An order to set aside an indictment, as provided in this chapter, is no bar to a future prosecution for the same crime."

The petitioner argues that the chapter mentioned only provides for resubmitting a case when a motion or a demurrer has been interposed by the accused and sustained by the court; and for the purposes of this case we shall assume that his position is well grounded, and also assume that no statute thus far mentioned confers upon the court power to resubmit an indictment on the motion of the district attorney, as was done in the cause we are now considering.

We shall now consider the sections of the code permitting the dismissal of an indictment on the motion of the district attorney or of the court. Section 1704, L. O. L., reads thus:

"The court may, either of its own motion or upon the application of the district attorney., and in furtherance of justice, order an action, after indictment, to be dismissed; but in that case, the reasons of the dismissal must be set forth in the order, which must be entered in the journal."

It will be observed that the section just quoted provides for a dismissal of the indictment. The order questioned by petitioner merely provides that the indictment be resubmitted.

Section 1705, L. O. L., provides that the district attorney cannot discontinue or abandon a prosecution for crime, except as provided in Section 1704; and finally Section 1706, L. O. L., is to the effect that an order for the dismissal of a charge or action, as provided in this chapter, is a bar to another prosecution for the same crime if it be a misdemeanor, but it is not a bar if the crime charged be a felony. The three sections just mentioned are all parts of Chapter 16. Murder in the second degree is a felony, and therefore, by the express terms of the statute, the dismissal of an indictment charging murder in the first degree would not bar a prosecution for murder in the second degree; nor does Section 2375, L. O. L., strengthen the argument of petitioner, even if it be assumed that what was once murder in the first degree is now not a crime because no punishment may be imposed: *State* v. *Gaunt*, 13 Or. 115, 121 (9 Pac. 55).

If the order made by the court be deemed to be a dismissal within the meaning of Section 1704, then by

the terms of Section 1706 the grand jury was warranted in returning the second indictment. If, on the other hand, the order to resubmit did not amount to a dismissal, and if we treat the first indictment as still pending, nevertheless the grand jury was not precluded from returning the second indictment. Up to this time the petitioner has not been put in jeopardy: *State* v. *Steeves,* 29 Or. 85–107 (43 Pac. 947).

The rule announced in *State* v. *Reinhart,* 26 Or. 466 (38 Pac. 822), is decisive of the question, and in that case the court uses the following language:

"It is also claimed that the power of the grand jury is at an end when it returns an indictment into court, and that it cannot afterward return another indictment against the same defendant for the same offense, unless by order of the court the case is resubmitted to them. We can find no warrant in law for this contention."

The general rule is that successive indictments may be returned against the same person for the same offense, unless prevented by some obstacle, such as former jeopardy or a statute: *Stuart* v. *Commonwealth,* 28 Gratt. (69 Va.) 950, 966; *Perkins* v. *State,* 66 Ala. 457–461; 22 Cyc. 223.

It appears from the record that the name of the petitioner has been erroneously entered as Chin Shing, as Jing Shing, and, when arraigned on the second indictment, Gung Shing appears as his true name. Although in no way involved at this time, still the errors mentioned should be corrected.

Viewing the facts from any position and at any angle of the case, the conclusion is that the petitioner is legally detained.

The writ is dismissed and the petitioner is re-manded.                                WRIT DISMISSED.

MR. CHIEF JUSTICE MOORE, MR. JUSTICE EAKIN and MR. JUSTICE BEAN concur.