Argued May 21, affirmed July 16, 1973

# STATE OF OREGON, *Appellant, v.* KENNETH ROY BARNES (No. 1922-C), *Respondent.*

511 P2d 1235

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Lee Johnson, Attorney General, and John W. Osburn, Solicitor General, Salem.

*Gary D. Babcock,* Public Defender, Salem, argued the cause and filed the brief for respondent.

Before Schwab, Chief Judge, and Langtry and Foley, Judges.

LANGTRY, J.

The state appeals from dismissal of an indictment charging first degree theft after the sustaining of defendant's demurrer thereto. ORS 164.055 (1)(a) provides:

"(1) A person commits the crime of theft in the first degree if, by other than extortion, he commits theft as defined in ORS 164.015; and

"(a) The total value of the property *in a single or aggregate transaction* is $200 or more * * *." (Emphasis supplied.)

The demurrer was based on the ground the indictment states more than one crime. ORS 135.630 (3).

The indictment reads:

"The said KENNETH ROY BARNES on or

about the 17th day of December, 1972 and the 18th day of December, 1972, in the county aforesaid, did unlawfully, with intent to defraud, by creating a false impression of value in the mind of another, to-wit, Gregory Schultz, Henry Quast, and Marcia Davis, obtain property, to-wit, clothing and currency of the United States of America, of another, to-wit, Alexander's Men's Store, and Keith O'Brien, Inc., West Park Plaza, Ontario, Oregon, in an aggragate [sic] transaction of a total value in excess of $200.00, by giving a bank check dated December 18, 1972 to the said Alexander's Men's Store in the sum of $80.00, signed by the said defendant, and, by giving two bank checks to the said Keith O'Brien, Inc., both checks in the sum of $80.00, one bank check being dated December 17, 1972, and the other bank check being dated December 18, 1972 * * *."

■ The state contends the indictment states the single crime of first degree theft. If it does state that crime, the fact that it also states the three separate lesser included crimes of second degree theft would not be a basis for sustaining the demurrer. *State v. Branton,* 49 Or 86, 87 P 535 (1906); *State v. Savage,* 36 Or 191, 60 P 610, 61 P 1128 (1900); *State v. Mc-Cauley,* 8 Or App 571, 575, 494 P2d 438, Sup Ct *review denied* (1972).

The key question is whether the acts alleged in the indictment fall within the meaning of "a single or aggregate transaction" under ORS 164.055 (1)(a).

The language in question was added as an amendment by the Senate Criminal Law and Procedure Committee. The committee had heard testimony that "professional" bad check artists usually wrote checks for less than the felony amount but that many professionals would often write checks aggre-

gating around $1,000 in a short time. Senate Criminal Law and Procedure Committee Minutes, March 3, 1971, March 5, 1971.

Testimony before the Senate committee indicated that the word "aggregate" was derived from New York case law.

*People v. Cox,* 286 NY 137, 36 NE2d 84, 136 ALR 943 (1941), was a prosecution for grand larceny. The defendant, a subway worker, was accused of stealing tokens from turnstiles, taking a small amount each day. Over a period of months the sum taken aggregated to over $1,000. The court stated:

"\* \* \* Here there was a continuing larceny by a thief operating under a single purpose to carry out a general fraudulent plan. We have first the formulation of a plan for systemized thievery, then the adoption of the plan by persons able to make it effective, and lastly its subsequent realization, together with the taking of the necessary steps to preserve a continuing operation unmolested \* \* \*." 286 NY at 144.

Aggregation was thus approved and this rule has been followed in similar cases where defendant was accused of taking property from one owner by the same means, from the same place, at different times. *Commonwealth v. England,* 350 Mass 83, 213 NE2d 222 (1966); *People v. Rossi,* 5 NY2d 396, 185 NYS2d 5, 157 NE2d 859 (1959); *People v. Daghita,* 276 App Div 20, 92 NYS2d 799 (1949), *affirmed as modified* 301 NY 223, 93 NE2d 649 (1950). However, in a case where defendant was convicted on nine counts of forgery involving nine different victims, a conviction for grand larceny in the tenth count was disallowed because the proof on trial failed to establish any tak-

ing or series of takings from a single owner of a sum large enough to constitute grand larceny. *People v. Thiel,* 26 App Div 2d 897, 274 NYS2d 417 (1966).

"Transaction" is a word that has frequently been defined by the courts of this state in the context of criminal cases. In *State v. Laundy,* 103 Or 443, 204 P 958, 206 P 290 (1922), the court stated:

> "In this jurisdiction it is not permissible to join two or more counts in a single indictment. An indictment must in the language of our statute 'charge but one crime,' and consequently if an indictment charges a defendant with two or more distinct and substantive offenses, it is bad for duplicity * * *.
>
> "The general rule is that where a single offense may be committed by several means it may be charged in a single count to have been so committed, if the ways or means are not repugant [sic] * * *.
>
> "* * * But the rule does not apply when repugnancy results from charging the acts conjunctively; *nor does the rule apply where the acts are distinct and are performed at different times and do not constitute component parts of one transaction*: [citing authorities]." (Emphasis supplied.) 103 Or at 466-67.

In *State v. McDonald,* 231 Or 48, 365 P2d 494 (1961), *cert denied* 370 US 903 (1962), the court said:

> "* * * The same transaction is usually to be found in a continuing crime. Such a crime has been defined as a 'continuous unlawful act or series of acts set on foot by a single impulse and operated by an unintermittent force, however long a time it may operate.' *Armour Packing Co. v. United States,* 82 CCA 135, 153 F 1, aff 209 US 56, 52 L ed 681, 28 S Ct 428. An example of a crime of this nature is to be found in the continuous and unin-

terrupted transportation of the same identical liquor through several counties. *State v. Shimman,* 122 Ohio St 522, 172 NE 367, 73 ALR 1502.

"Also, in larceny cases it has been held in the majority of jurisdictions that the stealing of property from different owners at the same time and place constitutes but one larceny. *State v. Clark,* 46 Or 140, 80 P 101; 28 ALR2d 1182.

"\* \* \* \* \* \*

"Each indictment [in *McDonald*] charges a separate and distinct act of violence at separate and distinct places against the property of different individuals and different property. Therefore, the plea does not meet the 'same transaction test.'" 231 Or at 53-54.

In *State v. Huennekens,* 245 Or 150, 152, 420 P2d 384 (1966), the court in ruling on what was to be considered one transaction for purposes of ORS 132.560① stated:

"For our immediate purpose here it is sufficient to say that the idea permeates the cases that to be joined the charges must relate to conduct or acts that are concatenated in time, place and circumstances and that the evidence of one charge would be relevant and admissible with the evidence of other charges \* \* \*."

The court in *Huennekens* went on to amplify

---

① ORS 132.560 provides:

"The indictment must charge but one crime, and in one form only, except that:

"(1) Where the crime may be committed by the use of different means, the indictment may allege the means in the alternative.

"(2) When there are several charges against any person or persons for the same act or transaction, instead of having several indictments, the whole may be joined in one indictment in several counts; and if two or more indictments are found in such cases, the court may order them to be consolidated."

its requirement of the admissibility of evidence of the separate charges by discussing cases from other jurisdictions where the evidence of one crime necessarily included or was inseparable from the evidence of the other crime. It quoted with approval *State v. Weitzel,* 157 Or 334, 344, 69 P2d 958 (1937):

> "'Appellants complain of the admission in evidence of the facts and circumstances surrounding the attempted rape. It is asserted that such evidence has no relevancy to the charge of sodomy. The law is well settled that, when several criminal acts are so connected with the defendant, with respect to time and locality, that they form an inseparable transaction, and a complete account of the offense charged in the indictment cannot be given without detailing the particulars of such other acts, evidence of the entire transaction is admissible, even though it may disclose the commission of another crime * * *.'" 245 Or at 154.

From the testimony presented to the committee at the time the amendment was adopted it would appear that the committee was adopting an erroneous version of the "transaction" definition given in *State v. Huennekens,* supra.

Richard Barton of the Multnomah County District Attorney's office presented an amendment that was eventually adopted as the statutory language in question. He testified that his amendment was aimed at covering the professional bad check situation.

> "Mr. Barton called attention to the amendments submitted by the Portland Study Committee and said he believed the Oregon Retail Association would support the amendments also, in that there [sic] were worked out after discussion with Mr. Christman (Arden-Mayfair, Inc.) and Mr. Dehaan (Fred Meyer Shopping Centers) following the hear-

ing held on Article 14 on March 2nd. (See Exhibit B, * * * [infra]).

"Senator Carson asked about the period of time during which the 'tacking' or 'aggregating' would be allowed—he wondered how long a period would be permitted.

"Mr. Barton replied that the 'transaction test' would be used—this is the test of pleading right now in the state. *If an act is too remote to qualify as part of one transaction or scheme, it is excluded from being used as evidence* presently. It is felt, therefore, that there is an existing body of case law defining 'transaction.' [Emphasis supplied.]
'. "* * * * *

Exhibit B
Minutes 3/5/71

## "PROPOSED AMENDMENTS TO
## "SENATE BILL 40
## "PORTLAND STUDY COMMITTEE

"On page 52, of the printed bill, Section 125, line 29, delete the period at the end of the line, insert a semicolon and add the word 'or.' After line 29, insert:

" '(b) The total value of the property in a single or aggregate transaction is $150 or more in value; or * * *

" '* * * * *.' " Senate Criminal Law and Procedure Committee Minutes, March 5, 1971.

An account of Mr. Barton's version of his testimony is included in the record in this case:

"In the check area, I illustrated that in the trial of a check case, as it then existed under obtaining money by false pretenses, there were well-defined bodies of case law in Oregon today that permitted a prosecutor, if he could prove that evidence of these other checks passed went to identity, common scheme, intent to defraud, modus operandi, and they were not too remote in time either before or

after the instant check on trial, that he could introduce those checks to prove those various things, and I suggested, in the Senate Committee, that in my opinion, the word 'transaction' was intended to adopt that very concept currently in Oregon case law in the areas of theft, crimes by check and theft by receiving."

Mr. Barton's testimony shows some confusion on the question of when evidence of one crime is admissible at a trial for another crime. The equation of the tests for admissibility of evidence with the same transaction test used for pleading purposes was misleading.

*State v. Hamilton*, 5 Or App 266, 268-69, 483 P2d 90, Sup Ct *review denied* (1971), contains a discussion of the admissibility of evidence of other crimes:

"* * * The general rule is that evidence of other crimes, having no substantial relevancy except to show that the accused is a bad man and hence probably committed the principal crime, is not admissible. *State v. Long*, 195 Or 81, 112, 244 P2d 1033 (1952). However, the exceptions to the exclusionary rule are numerous. Some are set out in *State v. Woolard*, 2 Or App 446, 467 P2d 652, Sup Ct *review denied* (1970). A more complete list of 10 exceptions is set out in McCormick, Evidence 326, 327-31, § 157 (1954), but warning is given there 'that the list is not complete, for the range of relevancy outside the ban is almost infinite.' Among the exceptions listed are:

" '(1) To complete the story of the crime on trial by proving its immediate context of happenings near in time and place. * * *

" '(2) To prove the existence of a larger continuing plan, scheme, or conspiracy, of which the present crime on trial is a part. * * *' "

In *State v. Cruse,* 231 Or 326, 372 P2d 974 (1962), where the charge arose from the writing of a $40 worthless check, defendant testified he did not know the check was bad. He was questioned concerning his attempts to pass several other bad checks on the previous day. The court stated:

"* * * This court has uniformly held in cases involving embezzlement or obtaining money by other fraudulent means that evidence of *other similar transactions* is admissible * * *." (Emphasis supplied.) 231 Or at 333.

While *State v. Huennekens,* supra, does not discuss the question directly, it appears to be referring to the first exception mentioned in *Hamilton* (to show immediate context near in time or place) when it discusses the admissibility of other crimes. *Huennekens* contains no inference that other crimes, evidence of which would be admissible under the second exception listed in *State v. Hamilton,* supra (continuing plan, scheme or conspiracy) or under the exception discussed in *State v. Cruse,* supra (relevant to show knowledge, intent), would for that reason alone be considered part of one "transaction."

■ Normally the "transaction" test is used to determine when other crimes are so closely linked with the elements of a given crime so as to permit joinder, ORS 132.560, or in certain situations to bar subsequent prosecutions. *State v. Brown,* 262 Or 442, 497 P2d 1191 (1972). A single crime may consist of acts that are so separate in time and place as to be inadmissible in evidence under the theory required by *State v. Huennekens,* supra, and thus not fit within the bounds of one "transaction." One such example is the situation described in *People v. Cox,*

supra. There, were it not for the fact that the court found the acts comprised but one crime, the separate acts would not be admissible in evidence together under the same transaction test of *State v. Huennekens,* supra, and *State v. Weitzel,* supra, though the evidence might be admissible under the theory of similar transactions mentioned in *State v. Cruse,* supra.

■ In substance the legislative history of ORS 164.055 (1)(a) contains irreconcilable conflicts. On the one hand it can be construed as indicating the intent that the separate acts here committed could be aggregated to constitute a felony; on the other hand it can be construed as saying that these acts could be aggregated only if they met the same transaction test previously enunciated by the Oregon Supreme Court. Faced with this conflict in determining the scope of the criminal statute, we must resolve it in favor of the more narrow interpretation. *State v. Welch,* 264 Or 388, 505 P2d 910 (1972). Therefore we interpret the statute as authorizing "aggregation" only if the component acts are a part of the same "transaction" as that word has been previously defined by the Oregon Supreme Court.[2]

■ In the case at bar the writing of separate bad checks on separate days in separate stores does not meet the "one transaction" test. These are separate acts that may be proven separately. The facts alleged in the indictment contradict the allegation that prop-

---

[2] For a general discussion of the term "transaction" in joinder of separate crimes for trial *see* State v. Ellis, 14 Or App 84, 511 P2d 1264 (1973); State v. Leverich, 14 Or App 222, 511 P2d 1265 (1973); State v. Rook, 14 Or App 211, 511 P2d 1245 (1973); and State v. Sanchez, 14 Or App 234, 511 P2d 1231 (1973).

erty valued at over $200 was taken in an "aggregate transaction" because the acts alleged are not capable of being part of the same "transaction." Therefore the indictment does not state the crime of first degree theft but rather at least two separate crimes of second degree theft. The defendant's demurrer was properly sustained.

Affirmed.